**REMCO INSURANCE COMPANY, a Delaware corporation and a domestic insurance company, Respondent, Appellant,**

v.

**The STATE of Delaware INSURANCE DEPARTMENT, the Honorable David N. Levinson, Insurance Commissioner of the State of Delaware, Petitioner, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 16, 1986.
Decided: Dec. 9, 1986.

Paul H. Boswell and William A. Denman (argued), of Schmittinger & Rodriguez, P.A., Dover, and S. Walter Foulkrod of Foulkrod, Reynolds & Havas, Harrisburg, Pa., for appellant.

David W. Lynch, Deputy Atty. Gen., Dover, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

CHRISTIE, Chief Justice:

This appeal concerns the question of whether it was error or an abuse of discretion for the Court of Chancery to appoint appellee, the Delaware Insurance Commissioner (Commissioner), receiver for appellant Remco Insurance Company (Remco) under the provisions of 18 *Del.C.* §§ 5901–5932. Remco contends that the Court of Chancery erred in appointing the Commissioner as a receiver because the Commissioner did not first exhaust the more limited remedies available to him under 18 *Del.C.* §§ 5941–5944. Remco also claims that the Court of Chancery abused its discretion in appointing a receiver under the circumstances of this case. For the reasons explained below, we affirm the decision of the Court of Chancery.

## I.

Remco, a Delaware corporation licensed as a domestic stock insurance company, is a wholly-owned subsidiary of Paxton National Insurance Company (Paxton), which is incorporated under the laws of Pennsylvania. All the officers of Remco are officers of Paxton. Prior to the suspension of Paxton's business in July 1985, Remco operated under a reinsurance agreement with Paxton. All premiums received by Remco were forwarded to Paxton, and Paxton in turn reimbursed Remco for all claims which Remco paid.

On July 17, 1985, the Pennsylvania Insurance Department issued an order pursuant to 40 *Pa.Stat.Ann.* § 221.10 (Purdon Supp. 1985) which required Paxton to suspend or limit its operations. Under this order, Paxton was prohibited from making payments to Remco or others without the prior written approval of the Pennsylvania Insurance

Department. The Pennsylvania Insurance Department could, but was not required to, allow Paxton to make payments to Remco.

Upon learning that Remco could no longer be assured of receiving payments from Paxton, the Delaware Insurance Commissioner determined that Remco's continued operation was likely to be hazardous to its policyholders. On July 18, 1985, the Commissioner issued a summary order suspending Remco's normal operations and providing for supervision of Remco by the Commissioner pursuant to 18 *Del.C.* §§ 5941–5944. There is no indication in the record that the Commissioner provided Remco with a list of requirements the satisfaction of which would end the period of supervision under the provisions of 18 *Del.C.* § 5942(a).

The Commissioner's office received additional information, after it issued its order on July 18, which materially altered the Commissioner's view of Remco's situation. The additional information consisted of testimony that the Pennsylvania Insurance Commissioner would not permit Paxton to make any payments to Remco under the reinsurance agreement because to do so would, in effect, favor one group of Paxton's policyholders (those insured through its wholly-owned subsidiary, Remco) over its remaining policyholders. In view of this information, the Commissioner apparently reassessed the overall situation and decided that he should seek a court-ordered receivership authorizing him to rehabilitate Remco. On November 1, 1985, the Commissioner petitioned the Court of Chancery for what is known as a rehabilitation order pursuant to 18 *Del.C.* § 5905.[1]

In its decision dated February 20, 1986, the Court of Chancery ruled that:

[t]he granting of receivership is ... an extreme remedy which ought not be im-

---

1. Section 5905 provides in relevant part:

   The Commissioner may apply to the court [of Chancery] for an order appointing him as receiver of and directing him to rehabilitate a domestic insurer upon one or more of the following grounds. That the insurer: (1) Is

impaired or insolvent or is in unsound condition or in such condition or using such methods and practices in the conduct of its business as to render its further transaction of insurance presently or prospectively hazardous to its policy-holders....

plemented unless there has been a clear showing that the statutory requisites have been met and that the more limited statutory remedy of department supervision (see 18 *Del.C.* §§ 5941–44) is or can reasonably be expected to be inadequate to address the cause of the insurer's problems.

The Court noted that Remco was not yet insolvent and was not actively engaged in practices which created hazards for its policyholders. However, the court went on to determine that receivership was warranted because Paxton was unable to make payments to Remco, and because an amount of $184,000 had been due from Paxton to Remco for several months. The court decided that mere supervision of Remco by the Commissioner would be inadequate in light of the facts outlined above, and the substantial risk that the Remco officers might be impaired in asserting Remco's rights against Paxton by reason of their duties as officers of Paxton.

On appeal to this Court, Remco argues that the Commissioner must exhaust the summary remedies available under 18 *Del.C.* §§ 5941–5944 before seeking a court-ordered receivership. More specifically, Remco contends that a Commissioner who has elected to pursue the summary remedy of supervision must comply with the requirements of § 5942(a) before he is free to petition for the more drastic remedy of receivership. Remco also claims that the Court of Chancery abused its discretion in granting receivership in this case.

## II.

Title 18 *Del.C.* ch. 59, "Rehabilitation and Liquidation," grants the Commissioner broad regulatory authority to protect policyholders and others who may be harmed by business practices of insurers. The Commissioner may initiate a proceeding in the Court of Chancery for the purpose of having himself appointed receiver to liquidate, rehabilitate, reorganize, or conserve an insurer's business (§§ 5901–5932). The Commissioner may also, under certain circumstances, take summary action against insurers without prior judicial approval (§§ 5941–5944). The statute does not indicate that the Commissioner, as a general rule, must exhaust summary remedies before petitioning the Court of Chancery for a receivership.

From July 1968, when the General Assembly enacted a comprehensive revision of the Delaware Insurance Code, until July 1984, Chapter 59 consisted of what is now called Subchapter I, "General Provisions" (§§ 5901–5932). Subchapter I authorizes the Commissioner to initiate in the Court of Chancery formal delinquency proceedings against domestic insurers. The remedies available to the Commissioner through these formal proceedings include the use of injunctions (§ 5904) and the appointment of the Commissioner as receiver with a view to rehabilitation of the company (§ 5905) or with a view to liquidation thereof (§ 5906).

The General Assembly added Subchapter II (§§ 5941–5944), "Summary Proceedings," effective July 20, 1984 "to permit immediate response to financial management problems which would jeopardize policyholders and others." 64 *Del.Laws* ch. 420 (quoted from the title of the Act). Sections 5941 and 5942 appear to be designed to enable the Commissioner to act quickly, without the delay and expense involved in petitioning the Court of Chancery, when the Commissioner determines after a hearing that the insurer has engaged in any act which would subject it to formal delinquency proceedings under that chapter (§ 5941(a)), or when the Commissioner has reasonable grounds to believe that irreparable harm to the insurer or policyholders may occur unless he acts immediately (§ 5941(b)).[2] In these circumstances, the

**2.** Subsections 5941(a) and (b) state:
(a) Whenever the Commissioner has reasonable cause to believe and determines, after a hearing ... that any insurer has committed or engaged in any act, practice or transaction that would subject it to formal delinquency proceedings under this chapter, he may make and serve upon the insurer and any other persons in-

Commissioner may issue orders to suspend the business of the insurer (§ 5941(d)) [3] and may take over the supervision of the business of the insurer (§ 5942).[4] Under § 5943, the Commissioner may also petition the Court of Chancery to issue, *ex parte* and without a hearing, an order enabling the Commissioner to seize an insurer's business for a period of up to 90 days.[5]

■ As the title of the Act indicates, the purpose of the summary remedies is to permit the Commissioner to act quickly when need be to prevent harm to policyholders. Neither the structure of the statute nor any provision therein suggests that, as a general rule, the longstanding formal proceedings under Subchapter I are to be brought in the Court of Chancery only if the informal and recently available summary remedies under Subchapter II have already been pursued to their limit. We conclude that the Commissioner is not required to exhaust summary remedies in order to seek and secure a court-ordered receivership or other formal remedies available through court order under Subchapter I.

Nevertheless, we note that the Court of Chancery recognized that the granting of receivership is an extreme remedy which should not be used unless other less drastic remedies are shown to be inadequate. *See also Salnita Corp. v. Walter Holding Corp.*, Del.Ch., 168 A. 74, 75 (1933). Summary proceedings present the Commission-

er with less drastic alternatives to formal delinquency proceedings in the Court of Chancery. The Chancellor ruled that if the Commissioner chooses not to pursue any of the summary remedies, or, as in this case, he seeks to move from a summary remedy into full court-ordered receivership, the Commissioner must show that the more limited statutory remedies in 18 *Del.C.* §§ 5941–5944 are, or can reasonably be expected to be, inadequate to address the insurer's problems. We adopt this ruling as proper under the statutory scheme outlined above.

### III.

■ Remco's general allegation that the Commissioner must exhaust summary remedies before pursuing receivership is accompanied by a more specific claim that the Commissioner, having elected to supervise Remco under § 5942(a), failed to comply with the requisites of receivership set forth in that section. In particular, Remco claims that the Commissioner failed to require in writing that Remco aggressively pursue its claims against Paxton and failed to allow Remco 90 days to attempt to do so. We conclude that the Commissioner's failure to take these steps does not preclude the action he did take in seeking a receivership in this case.

Section 5942(a) provides in relevant part:

---

volved such orders, including an order suspending the business of an insurer, as are reasonably necessary to correct, eliminate or remedy such conduct, condition or ground.

(b) If the conditions of subsection (a) of this section, other than notice and hearing, are satisfied and if the Commissioner has reasonable grounds to believe that irreparable harm to the property or business of the insurer or to the interests of its policy or certificate holders, creditors or the public may occur unless he issues with immediate effect the orders described in subsection (a) of this section, he may make and serve such orders without notice and before hearing, simultaneously serving upon the insurer notice of hearing....

**3.** Section 5941(d) provides *inter alia* that "[a]ny suspension order made by the Commissioner

under subsection (a) of this section shall prohibit issuance of policies, transfers of property and payments of moneys without prior written approval of the Commissioner."

**4.** Section 5942 is quoted and discussed in detail below.

**5.** Under § 5943, the Commissioner may:

take possession and control of all or a part of the property, books, accounts, documents and other records of an insurer and of the premises occupied by it for the transaction of its business, and ... enjoin the insurer ... from disposition of its property and from transaction of its business except with the written consent of the Commissioner.

If upon examination or at any other time the Commissioner has reasonable cause to believe, and determines, that an insurer has committed, engaged in or is about to engage in any act, practice or transaction that would subject it to formal delinquency proceedings under this chapter ... then the Commissioner *shall upon his determination notify the insurer of his determination and furnish to the insurer an order or orders containing a written list of the Commissioner's requirements to abate his determination.* ... if placed under an order of supervision, [the insurer] *shall have 90 days* from the date of service of such order within which to comply with the requirements of the Commissioner. In the event of such insurer's failure to comply within such time, the Commissioner may institute proceedings in the Chancery Court to have a rehabilitator or liquidator appointed under this subchapter. (Emphasis added.)

The first sentence of this section protects insurers against arbitrary use of the Commissioner's extraordinary extra-judicial power to suspend or take over the supervision of an insurer's business. The Commissioner must notify the insurer of his determination and provide the insurer with a written list of requirements the satisfaction of which will result in the lifting of the order. This provision alerts the insurer to the specific problems found by the Commissioner and enables the insurer to take steps to remove the stigma of suspension or supervision.[6]

If the Commissioner determines to supervise, § 5942(a) states that the insurer "shall have 90 days" to address the requirements furnished by the Commissioner in writing. The statute then points to formal remedies available "in the event" that the insurer fails to remedy the problems within that period. Remco claims that this language imposes a bar against initiation of formal proceedings under Subchapter I until the insurer has had 90 days to seek to cure problems identified in writing by the Commissioner.

■ We are of the opinion that the language quoted sets forth guidelines for the period of supervision but in so doing it does not establish requisites for the initiation of formal proceedings. Section 5942(a) establishes a 90–day initial time frame for supervision, similar to the period of seizure of up to 90 days set forth in § 5943. Section 5942(a) then points to other remedies available "in the event" that supervision is not successful. As explained above, the General Assembly enacted Subsection II to provide the Commissioner with additional remedies, not to impose restrictions upon remedies already available. Understood in context, § 5942(a) provides guidance pertaining only to supervision proceedings. The Commissioner remains free at any time to seek the formal remedy of receivership by showing that the requisites for receivership, independently articulated in Subchapter I, have been met.

We also note that in this case, the Commissioner discovered new information after the July 18 order which indicated that Remco's situation was more serious than previously thought. Specifically, the Commissioner learned that the Pennsylvania Insurance Department would not in fact permit Paxton to honor its reinsurance obligations with Remco. There is nothing in § 5942(a) to suggest that the Commissioner must wait out a 90–day period of supervision before taking more drastic steps to cope with a problem the extent of which was not known by him at the time of his initial action.

### IV.

Remco's final contention is that the order appointing the Commissioner receiver con-

---

**6.** In this case the Commissioner apparently failed to provide Remco with a written list of requirements. However, Remco did not contest the order of supervision. Therefore, the question of the effect of the Commissioner's failure to provide the list on the validity of the order of supervision is not before the Court.

stitutes an abuse of discretion in the circumstances of this case. The action the Court of Chancery took was fully justified, and we find no abuse of discretion. In view of the established facts and because it is the Court of Chancery in which the statute vests discretion, this Court will not attempt to substitute its own notions on the matter for those carefully articulated by the Court of Chancery. *Chavin v. Cope,* Del. Supr., 243 A.2d 694 (1968).

For the reasons explained above, we affirm the decision of the Court of Chancery.